IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHARON SCOTT, individually and on behalf of others similarly situated | § § | Civil Action No. |
| Plaintiff | § § | 3:19-cv-00472-N |
| V. | § § | |
| VERYABLE, INC., and MEDLINE INDUSTRIES, INC. | § § | Judge David C. Godbey |
| Defendants | § § § | |

**Memorandum in Support of the Motion to Dismiss Claims Against Veryable for Lack of Subject Matter Jurisdiction (Fed.R.Civ.P. 12(b)(1)) and To Compel Arbitration.**

By: _/s/ Angella H. Myers_____
    Angella H. Myers
    State Bar No. 24027229
    amyers@myerslawllp.com
    Janice S. Parker
    State Bar No. 15488050
    jparker@myerslawllp.com

    **THE MYERS LAW GROUP, LLP**
    8144 Walnut Hill Lane, Suite 390
    Dallas, Texas 75231
    Telephone: (972) 781-2400
    Facsimile: (972) 781-2401

    *Attorneys for Defendant, Veryable, Inc.*

## Table of Contents

I. BACKGROUND ..................................................................................................... 1

   1. Introduction. ..................................................................................................... 1

   2. Factual Background. ........................................................................................ 2

      A. Plaintiff agreed to the Terms of Service. ............................................... 2

      B. Plaintiff's claim fall within arbitration agreement. ................................. 4

II. ARGUMENT ....................................................................................................... 5

   1. The claims against Veryable must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1). ........... 5

   2. The Federal Arbitration Act mandates that the Court compel arbitration. ......................... 6

   3. The parties entered into a binding arbitration agreement when Plaintiff consented to Veryable's Terms of Service. ........................................................................ 6

      A. An enforceable clickwrap agreement existed. ........................................ 8

      B. Alternatively, an enforceable browsewrap agreement existed. ............................ 10

      C. Alternatively, an enforceable hybrid agreement existed. ....................................... 11

   4. The parties delegated authority to determine threshold questions of arbitrability to an arbitrator. ...................................................................................................... 14

   5. Because the parties delegated arbitrability questions, the Court must compel arbitration. 15

   6. Since the waiver of class actions is enforceable, the parties are entitled arbitration. ........ 16

   7. The Court should dismiss this action against Veryable pending resolution of arbitration. 18

III. CONCLUSION ................................................................................................... 18

.

## Table of Authorities

**Cases**

*Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*,
729 F.3d 443, 447 n.1 (5th Cir. 2013) ..................................................................... 18

*Adkins v. Labor Ready, Inc.*,
185 F. Supp. 2d 628 (S.D.W. Va. 2001) ................................................................. 15

*Alford v. Dean Witter Reynolds, Inc.*,
975 F.2d 1161, 1164 (5th Cir. 1992 ................................................................. 18, 19

*Am. Bankers Ins. Co. of Fla. v. Inman*,
436 F.3d 490, 493 (5th Cir. 2006) ............................................................................ 6

*Arnold v. Homeaway, Inc.*,
890 F.3d 546, 550 (5th Cir. 2018) ...................................................................... 6, 14

*Ascension Orthopedics, Inc. v. Curasan AG*,
No. 1:06-cv-424-LY, 2006 WL 3257723, at *1 (W.D. Tex. Oct. 26, 2006) ........... 18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333, 339 (2011) .......................................................................................... 7

*Ballew v. Cont'l Airlines, Inc.*,
668 F.3d 777, 781, 787 (5th Cir. 2012) ..................................................................... 5

*Baptist Hosps. of Se. Texas v. SelectCare of Texas, Inc.*,
2018 WL 5569424, at *3 (E.D. Tex. Oct. 4, 2018), *report and recommendation adopted,* 2018
WL 5532483 (E.D. Tex. Oct. 26, 2018) ..................................................................... 6

*Barnett v. Network Sols., Inc.*,
38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied) ............................... 19

*Bongalis-Royer v. RJ Worldwide*, LLC,
2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015) ......................................... 8, 13

*Brennan v. Opus Bank*,
796 F.3d 1125, 1130 (9th Cir. 2015) ...................................................................... 14

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585, 587, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ........................... 12, 13

*Copello v. Boehringer Ingelheim Pharm. Inc.,*
    812 F. Supp. 2d 886 (N.D. Ill. 2011) ..................................................... 17

*DHI Grp., Inc. v. Kent*,
    2017 WL 4837730, at *2 (S.D. Tex. Oct. 26, 2017) ............................. 10

*Douglas v. Regions Bank*, 7
    57 F.3d 460, 464 (5th Cir. 2014)........................................................... 15

*Edwards v. Doordash, Inc.*,
    888 F.3d 738, 745 (5th Cir. 2018)........................................................... 7

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ........................................................................ 17

*Fteja v. Facebook, Inc.*,
    841 F.Supp.2d 829, 834-35 (S.D.N.Y. 2012) ......................... 11, 12, 13

*Gaffers v. Kelly Servs., Inc.*,
    900 F.3d 293, 297 (6th Cir. 2018)....................................... 5, 8, 17

*Gilbert v. Donahoe*,
    751 F.3d 303, 306 (5th Cir. 2014)........................................................... 5

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20, 25 (1991)........................................................................... 6

*Heyward v. Public Housing Admin.*,
    238 F.2d 689, 694-695 (5th Cir. 1956) ................................................... 5

*Hill-Smith v. Silver Dollar Cabaret, Inc.*,
    2018 WL 6579917, at *2 (W.D. Ark. Dec. 13, 2018)........................... 17

*Hood v. Uber Techs., Inc.*,
    2019 WL 93546, at *6 (M.D.N.C. Jan. 3, 2019).................................... 17

*In re Intern. Profit Assoc., Inc.*,
    286 S.W.3d 921, 923 (Tex. 2009) ......................................................... 19

*In re Online Travel Co.*,
    953 F.Supp. 2d 713, 718–19 (N.D. Tex. 2013)................................... 8, 9

*James v. Glob. TelLink Corp*,
    852 F.3d 262, 267 (3d Cir. 2017).................................................... 7, 10

*Jia v. Nerium Int'l LLC*,
  2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018) .......................................................... 3, 9

*Klebba v. Netgear, Inc.*,
  2019 WL 453364, at *4 (W.D. Tex. Feb. 5, 2019) ................................................... 8

*Kubala v. Supreme Prod. Servs., Inc.*,
  830 F.3d 199, 201 (5th Cir. 2016) ................................................................ 6, 14, 15

*May v. Expedia, Inc.*,
  2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018), report and recommendation adopted,
  2018 WL 4343427 (W.D. Tex. Aug. 27, 2018) ........................................................ 11

*Murchison Capital Partners, L.P. v. Nuance Communs., Inc.*,
  625 Fed.Appx. 617, 627 (5th Cir. 2015) .................................................................... 5

*Newell Rubbermaid Inc. v. Storm*,
  2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014) ............................................... 7, 8

*Omni Pinnacle, LLC v. ECC Operating Servs., Inc.*,
  255 F. App'x 24, 26 (5th Cir. 2007) ........................................................................... 5

*Perez v. Lemarroy*,
  592 F. Supp. 2d 924 (S.D. Tex. 2008) .................................................................... 15

*Petrie v. GoSmith, Inc.*,
  2019 WL 423064, at *2 (D. Colo. Jan. 31, 2019) .................................................... 11

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
  687 F.3d 671, 675 (5th Cir. 2012)............................................................................ 14

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393, 403 (2d Cir.2004)............................................................................... 12

*Sanders v. Zwicker & Associates, P.C.*,
  2014 WL 11456070 at fn. 2 (N.D. Tex. September 9, 2014)...................................... 3

*Sharifi v. AAMCO Transmissions, Inc.*,
  2007 WL 1944371, at *3 (N.D. Tex. June 28, 2007 ........................................... 4, 15

*Smith v. Santander Consumer USA, Inc.*, 2018 WL 2225085, at *1 (N.D. Tex. May 15, 2018) ... 6

*Summit Emergency Holdings, LLC v. Michael J. Camlinde & Assocs., Inc.*,
  2018 WL 5631502, at *6 (N.D. Tex. Oct. 30, 2018) ............................................... 16

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
   No. 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007)...................... 8, 10

*Temple v. Best Rate Holdings LLC*,
   2018 WL 6829833, at *8 (M.D. Fla. Dec. 27, 2018) .......................................................... 8, 11

**Statutes**

Fed.R.Civ. Pro. Rule 12(b)(1) ............................................................................ 1, 5, 6, 19

Fed.R.Civ. Pro. Rule 12(b)(3) ....................................................................................... 5

Fed.R.Civ. Pro. Rule 12(b)(6) ....................................................................................... 6

9 U.S.C. §§ 1, *et seq.* ................................................................................................... 6

9 U.S.C. § 2 .................................................................................................................. 6

9 U.S.C. § 3 ................................................................................................................ 18

Veryable moves the Court to dismiss Plaintiff's Complaint against it and to compel arbitration.[1] In support of its motion, Veryable respectfully states as follows:

## I. BACKGROUND

### 1. Introduction.

Plaintiff Sharon Scott, on behalf of herself and others similarly situated, filed a Fair Labor Standards Act collective action against Veryable, Inc. and Medline Industries, Inc. alleging they misclassified her as an independent contractor and not as an employee and thus failed to pay her overtime of one and one-half times her regular rate.  Veryable denies any liability.

Veryable is an on-demand labor marketplace for manufacturing, logistics, and warehousing that allows businesses and workers to connect directly. Businesses can gain flexible capacity and quality workers, and operators get flexible work arrangements and diverse work opportunities. The gig economy and its on-demand workforce are transforming the way people work by offering individuals the flexibility to work when and where they want, as much or as little as needed.

Individuals (known as "operators") register with Veryable to find work through its online app, and businesses can register with Veryable to post work opportunities on the app and find and select workers.  In sum, when a business needs a worker, the business can  post the work opportunity to Veryable's app.  The operators are notified of the opportunity through the app, and they can choose to bid on the opportunity or not, *i.e.*, indicate whether they are available and willing to perform that particular work. The business reviews the pool of willing operators and accepts the best ones for the opportunity. If selected by the business, the operator reports to the business' workplace and performs the work as directed by the business. For the business' use of the app, Veryable charges the businesses for the operators' direct labor costs plus a surcharge, and

---

[1] Veryable makes this motion without waiver of its right to compel arbitration.  In the event the Court would construe Veryable's Motion to Dismiss pursuant to Rule 12(b)(1) as a waiver of its arbitration rights, Veryable asks that the Court consider only its Motion to Compel Arbitration.

Veryable handles the payments to the operators based on the payrate set by the business and the hours-worked, as reported by the business.

In this case, Plaintiff Sharon Scott created and activated an account with Veryable, and through its online app, she obtained work with several of Veryable's customers, including the co-defendant Medline Industries. Using Veryable's platform, Medline accepted Plaintiff's bid to work at Medline's distribution center as a warehouse laborer for the hours and days that she was willing to work.  Thus, Plaintiff worked as a warehouse laborer at Medline's distribution center, and she was paid by Veryable based on the payrate set by Medline and based on the hours reported by Medline.

However, Plaintiff alleges Medline and Veryable misclassified her as an independent contractor and not as an employee and thus failed to pay her overtime.  She also alleges Medline and Veryable are her joint employers. On behalf of herself and other similarly situated operators, she seeks back wages for the unpaid overtime, including liquidated damages and attorneys' fees.

Again, Veryable denies any liability, but this Honorable Court does not need to consider the merits of Plaintiff's claims because the parties have agreed to arbitrate their claims.

## 2. Factual Background.

The following facts establish that the parties agreed to arbitrate Plaintiff's claim against Veryable.  In particular, Plaintiff consented to Veryable's Terms of Service, which conspicuously include an arbitration agreement.

### A. Plaintiff agreed to the Terms of Service.

Users of Veryable's app are required to register and take affirmative steps to create and activate their account. After entering basic contact information to create an account, users cannot complete the transaction or proceed any further until they the take affirmative steps establishing

their consent to the Terms of Service. See the Declaration of Noah Labhart which explains this process.

There are two methods that can be used to create and activate an account: (1) through an app store; or (2) through a web-form on Veryable's website.  There are some differences between the two methods, but all users utilizing Veryable's application agree to arbitration.  Stated another way, both methods for creating an account include an agreement to arbitrate.

Sharon Scott's account was created through the web-form on Veryable's website. As more fully described in the Declaration of Noah Labhart and images attached thereto, Plaintiff Sharon Scott was required to finish the activation process by clicking a button labeled "Finish." Immediately below the "Finish" button, the following statement is provided: **By signing up to use Veryable, you agree to our Terms of Service and Privacy Policy."**  The phrase "Terms of Service" is in a different color to make it more conspicuous and is hyperlinked to the Terms of Service.   See the exhibit marked as Veryable 4.

Furthermore, the Terms of Service immediately begins with the "ARBITRATION NOTICE" in all capital letters.  See the exhibit marked as Veryable 5. Because the app prevents users from proceeding any further until they click the "Finish" button, this process is called a "clickwrap" agreement, and courts have held such a process  is sufficient to bind the parties to the Terms of Service. *Jia v. Nerium Int'l LLC*, 2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018).

Defendant respectfully requests this Honorable Court take judicial notice, pursuant to FRE 201, of the Veryable application and its features, which are accurate, verifiable and readily available to the public and cannot be reasonably questioned and are the proper subject of judicial notice.  See also, *Sanders v. Zwicker &* Associates, P.C., 2014 WL 11456070 at fn. 2 (N.D. Tex. September 9, 2014).

**B.      Plaintiff's claim fall within arbitration agreement.**

The arbitration agreement in the Terms of Service[2] provides:

Applicability of Arbitration Agreement. All claims and disputes arising out of or relating to these Terms or the use of the Services that cannot be resolved in small claims court will be resolved by binding arbitration on an individual basis, except that You and Veryable are not required to arbitrate any dispute in which either party seeks equitable relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents.

The arbitration agreement further therein also provides:

Small Claims Court. Notwithstanding the foregoing, either You or Veryable may bring an individual action in small claims court.

When interpreting those two sections in connection with each other, the arbitration agreement is applicable to "all claims and disputes" arising out of or relating to the Terms or the use of the Services, unless a party elects to bring the action in small claims court.  Such "[b]road arbitration clauses are not limited to claims that literally arise under the contract, but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute." *Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *3 (N.D. Tex. June 28, 2007.

The arbitration agreement, however, is conditioned upon the waiver of class or consolidated actions being enforceable. The Terms of Services contains a waiver of class or consolidated actions (Veryable 17), which provides:

Waiver of Class or Consolidated Actions. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER. If, however, this waiver of class or consolidated actions is deemed invalid or unenforceable, neither You nor Veryable are entitled to arbitration; instead all claims and disputes will be resolved in a court as set forth in Sections 12 and 13.

---

[2] See the Terms of Service (Veryable 17) and the Declaration of Noah Labhart authenticating the Terms of Service.

If the waiver of class actions is invalid or unenforceable, then neither party is entitled to arbitration. Instead, all claims and disputes will be resolved in a court. As discussed herein, the parties are entitled to arbitration since the waiver is valid and enforceable. See *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 297 (6th Cir. 2018) (holding arbitration agreements containing class waivers are enforceable in FLSA cases).

## II. ARGUMENT

**1.      The claims against Veryable must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).**

A challenge to a court's subject matter jurisdiction over a particular dispute is properly raised by a Rule 12(b)(1) motion. *Heyward v. Public Housing Admin*., 238 F.2d 689, 694-695 (5th Cir. 1956). The Fifth Circuit stated: "We have held that a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration." *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014), citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781, 787 (5th Cir. 2012) and *Omni Pinnacle, LLC v. ECC Operating Servs., Inc.*, 255 F. App'x 24, 26 (5th Cir. 2007) (affirming the district court's order dismissing case pursuant to Rule 12(b)(1) on the ground that agreement between parties required arbitration of dispute).

Federal courts allow a party to enforce an arbitration agreement through a motion to dismiss under this rule. See *e.g., Murchison Capital Partners, L.P. v. Nuance Communs., Inc.*, 625 Fed.Appx. 617, 627 (5th Cir. 2015) ("We … affirm the dismissal of [plaintiff]'s securities fraud claim, [] on the alternative ground that [defendant] would have been entitled to prevail on a Rule 12(b)(1) or 12(b)(3) motion to dismiss the case because the dispute is covered by the arbitration clause"); *Smith v. Santander Consumer USA, Inc.*, 2018 WL 2225085, at *1 (N.D. Tex. May 15,

5

2018)("In this case, defendant has shown that plaintiff's claim is subject to an arbitration agreement….Accordingly, dismissal of plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate."); see also *Baptist Hosps. of Se. Texas v. SelectCare of Texas, Inc.*, 2018 WL 5569424, at *3 (E.D. Tex. Oct. 4, 2018), *report and recommendation adopted,* 2018 WL 5532483 (E.D. Tex. Oct. 26, 2018) ("Dismissing a case based on an arbitration clause is permissible under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).")

2.      **The Federal Arbitration Act mandates that the Court compel arbitration.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*., is broad in scope and provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA "permits an aggrieved party," such as Veryable, "to file a motion to compel arbitration when an opposing 'party has failed, neglected, or refused to comply with an arbitration agreement.'" *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 25 (1991)). The Court must compel arbitration if it finds that (1) a valid agreement to arbitrate exists between the parties; and (2) the dispute falls within the scope of that valid agreement. See *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). All those elements exist here.

3.      **The parties entered into a binding arbitration agreement when Plaintiff consented to Veryable's Terms of Service.**

"When a party seeks to compel arbitration based on a contract, the first, and perhaps most obvious, question for the court is whether there is a contract between the parties at all." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018).

The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation omitted). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id*. (internal citations omitted). Therefore, to determine whether a valid contract exists between the parties, courts apply ordinary principles of state contract law. *Edwards v. Doordash, Inc*., 888 F.3d 738, 745 (5th Cir. 2018).

Here, the Veryable Terms of Service are governed by "the laws of the State of Delaware." (Veryable 18). The Court should therefore apply Delaware law when interpreting the nature and scope of the arbitration agreement. See *Edwards*, 888 F.3d at 745 (applying California law where the agreement at issue contained a California choice of law provision and the parties did not challenge the validity of that provision). Assuming, however, Plaintiff denies agreeing to the Terms, the court may find the Terms' choice-of-law provision does not determine the decisional law for the parties' contract-formation dispute, and therefore, the Court may apply the law of the forum state, Texas.

Nevertheless, this choice of law provision is not outcome determinative here. Texas contract law is not meaningfully distinct from Delaware law. With respect to the enforceability of Terms of Service, including the arbitration provision, the law of Delaware is consistent with Texas law. See *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014) ("clickwrap agreements…are enforceable under Delaware law.") and *James v. Glob. TelLink Corp,* 852 F.3d 262, 267 (3d Cir. 2017)("where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements.")  And Courts across various jurisdictions have

7

uniformly enforced arbitration agreements and class action waivers like the one at issue here. *E.g.*, *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 297 (6th Cir. 2018).

To determine if a valid agreement to arbitrate exists between the parties in the context of using an online app, Courts consider if the Terms of Service is a clickwrap agreement, browsewrap agreement, or hybrid agreement.

*Clickwrap:*  A clickwrap agreement allows a user to assent to the terms of a contract by clicking a button on the web site, and if the user does not accept the terms of the agreement, the web site will not complete the transaction. Additionally, courts have held that when the agreement is located at a hyperlink and is immediately available at the stage of assent, the process is considered a clickwrap agreement. *Bongalis-Royer v. RJ Worldwide*, LLC, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015); *In re Online Travel Co.*, 953 F.Supp. 2d 713, 718–19 (N.D. Tex. 2013),

*Browsewrap*:  A browsewrap agreement does not require the user to expressly manifest assent to the Terms of Service, but rather, a party provides his or her assent simply by using the website. *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007).

*Hybrid*: A hybrid agreement resembles a clickwrap agreement because the hyperlink to terms is conspicuous. *Temple v. Best Rate Holdings LLC*, 2018 WL 6829833, at *8 (M.D. Fla. Dec. 27, 2018) ("courts have enforced browsewrap agreements where hyperlinks to terms are conspicuous. And, courts have enforced "hybrid" browsewrap agreements.")

## A.    An enforceable clickwrap agreement existed.

Veryable's Terms of Service constitute a "clickwrap" agreement. As with many clickwrap agreements, the full text of the Terms of Service appears on a separate, and hyperlinked webpage. Courts routinely find clickwrap agreements enforceable under just such circumstances. The court should find that Scott had notice of the Terms of Service and assented to them, including the arbitration agreement contained therein.

Delaware and Texas courts recognize the validity of clickwrap agreements. *Klebba v. Netgear, Inc.*, 2019 WL 453364, at *4 (W.D. Tex. Feb. 5, 2019); *Newell Rubbermaid Inc. v. Storm*,

2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014) ("clickwrap agreements…are enforceable under Delaware law.").

"It is well established under Texas law that assent through an affirmative 'click' is sufficient to bind the parties." *Jia v. Nerium Int'l LLC*, 2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018). Thus, since Veryable's Terms of Service is a clickwrap agreement, the arbitration provision is enforceable. No further inquiry is required, and the Court should find a valid agreement to arbitrate exists between the parties.

As discussed above, Plaintiff Sharon Scott had to click the "Finish" button in order to complete the activation process, and immediately below the "Finish" button, the following statement is provided: "**By signing up to use Veryable, you agree to our Terms of Service and Privacy Policy.**" The phrase "Terms of Service" is hyperlinked to the Terms of Service. The Northern District of Texas held that a nearly identical process was an enforceable clickwrap agreement. *In re Online Travel Co.*, 953 F.Supp. 2d 713, 718–19 (N.D. Tex. 2013).

In the case *In re Online Travel Co.*, 953 F.Supp. 2d 713, 718–19 (N.D. Tex. 2013), the Northern District of Texas held Travelocity provided sufficient evidence the plaintiffs manifested assent to the User Agreement, including its arbitration provision and class action waiver, even though Travelocity did not provide transaction-specific evidence as to each plaintiff. The court found plaintiffs assented to Travelocity's User Agreement by clicking on a button that said: "Agree and Complete Reservation," and directly below this button was a notice explaining that, by clicking the button, the user agreed to the policies set forth in the User Agreement, which was accessible via hyperlink. Moreover, the Northern District of Texas held Travelocity's User Agreement was a valid clickwrap agreement since the User Agreement was conspicuously

presented and plaintiffs assented to the User Agreement by clicking the "Accept" button to complete the online transaction.

B.      **Alternatively, an enforceable browsewrap agreement existed.**

If the court finds the agreement is a browsewrap agreement, then the court should still find the agreement is valid and enforceable since Sharon Scott had constructive notice of the conspicuously placed Terms of Service.

To enforce a browsewrap agreement, the user must have actual or constructive knowledge of the terms and conditions of the agreement to prove a valid agreement existed between the user and the company. *DHI Grp., Inc. v. Kent*, 2017 WL 4837730, at *2 (S.D. Tex. Oct. 26, 2017). Thus, a browsewrap agreement is binding when a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site. *Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007). Constructive knowledge may be established by providing sufficient notice of the terms and conditions. *Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007). If the terms of the agreement are reasonably conspicuous to an average user, then constructive notice may be established. *Sw. Airlines Co. v. BoardFirst, L.L.C.,* 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007).  And Delaware law likewise holds that "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements." *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017).

Here, given the conspicuously placed statement ("By signing up to use Veryable, you agree to our Terms of Service and Privacy Policy") immediately below the "Finish" button, with the

phrase "Terms of Service" hyperlinked to the Terms of Service,  Plaintiff Scott had constructive notice of those Terms of Service.

###### C.      Alternatively, an enforceable hybrid agreement existed.

Accordingly, the court may find the Veryable agreement used in the web-form activation process is a "hybrid agreement" where "the terms being accepted do not appear on the same screen as the accept button, but are available with the use of hyperlink."  *Petrie v. GoSmith, Inc.*, 2019 WL 423064, at *2 (D. Colo. Jan. 31, 2019).  A "hybrid agreement weighs in favor of valid notice, as courts have generally been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement." *Temple v. Best Rate Holdings LLC*, , 2018 WL 6829833, at *8 (M.D. Fla. Dec. 27, 2018).

The court in *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 834-35 (S.D.N.Y. 2012) found that the user was put on notice of the Terms of Service when the user clicked the "Sign Up" button and right below the button was a sentence that read: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service."

And *May v. Expedia, Inc.*, 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018), report and recommendation adopted, 2018 WL 4343427 (W.D. Tex. Aug. 27, 2018), the Western District of Texas found that the website was sufficient to put plaintiff on notice that by continuing the transaction he was agreeing to the Terms and Conditions and to bind him to those Terms and Conditions. The website required the user to click a "Continue" button to complete the transaction, and directly above the "Continue" button informed the user that "[b]y clicking 'Continue' you are agreeing to our Terms and Conditions and Privacy Policy." The "Terms and Conditions" and "Privacy Policy" were in blue, as opposed to black, font to indicate they were hyperlinks. Again,

the processes in *May v. Expedia* and *Fteja v. Facebook* were essentially the same process used by Veryable when users used the web-form method to create and activate their account.

In other words, is it enough that Veryable warns its users that they will accept terms if they click a button while providing the opportunity to view the terms by first clicking on a hyperlink? Courts have overwhelmingly answered that question - "yes." *Fteja v. Facebook, Inc*., 841 F.Supp.2d 829, 834-35 (S.D.N.Y. 2012) (see citations therein).

As the Second Circuit has reminded us, "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir.2004). To make that point, the Second Circuit used a rather simple analogy (*Id*. at 401), and for purposes of this case suppose the following: Veryable maintains a roadside fruit stand displaying bins of apples, and above the bins of apples is a sign that say, "By picking up this apple, you consent to the terms of sales by this fruit stand. For those terms, turn over this sign." "In those circumstances, courts have not hesitated in applying the terms against the purchaser." *Fteja v. Facebook, Inc*., 841 F.Supp.2d 829, 834-35 (S.D.N.Y. 2012).

Indeed, in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court upheld a forum selection clause in fine print on the back of a cruise ticket, even though the clause became binding at the time of purchase, and the purchasers only received the ticket some time later. See *id*. In other words, the purchasers were already bound by terms by the time they were warned to read them.

There is no reason why that outcome should be different because Veryable's Terms of Service appear on another screen rather than another sheet of paper. There is no difference between a hyperlink or a sign on a bin of apples saying "Turn Over for Terms" or a cruise ticket with fine

print saying "SUBJECT TO CONDITIONS OF CONTRACT ON LAST PAGES IMPORTANT! PLEASE READ CONTRACT…." *Shute*, 499 U.S. at 587, 111 S.Ct. 1522.

The District court in *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) said with respect to those individual who frequently use the Internet that "it is not too much to expect that an internet user…would understand that the hyperlinked phrase "Terms of Use" is really a sign that says "Click Here for Terms of Use" and "clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket."

Here, like the plaintiff in *Fteja v. Facebook, Inc*., Veryable's users were informed of the consequences of their assenting click and they were shown, immediately below, where to click to understand those consequences. "That was enough." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d at 840.  That Plaintiff may not have read these terms is inapposite. "Texas courts have held, against protestations of inadequate notice for not having read all terms, that a contracting party, absent fraud, has the responsibility to read an electronically-presented contract, and cannot complain if they do not do so." *Bongalis-Royer v. RJ Worldwide, LLC*, 2015 WL 12778846, at *6 (E.D. Tex. July 16, 2015).

Since Scott had to click the "Finish" button  to sign into the app, and given the placement of the Terms and Conditions hyperlink immediately below the "Finish" button, along with notice saying "By signing up to use Veryable, you agree to our Terms of Service and Privacy Policy," the court should find that Scott had notice of the Terms of Conditions and assented to them.  The court should find that the web-form activation process is an enforceable clickwrap agreement; or alternatively, it is a browsewrap agreement that resembled a clickwrap agreement; or alternatively, it is a browsewrap agreement with a conspicuously placed notice and hyperlink to the Terms of Service, which establishes constructive knowledge and notice of the Terms of Service.   Under

13

these facts, the arbitration provision is enforceable, and Scott should be compelled to arbitrate her claims.

## 4.    The parties delegated authority to determine threshold questions of arbitrability to an arbitrator.

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold*, 890 F.3d at 551. Because Plaintiff affirmatively consented to the arbitration agreement in the Terms of Service, the only remaining questions for the Court are: (1) whether the Court or the arbitrator decides questions of arbitrability; and (2) if the Court decides arbitrability, whether the dispute falls within the scope of the arbitration clause. *See Kubala*, 830 F.3d at 202.

To determine arbitrability, the parties must "evince[] an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* "[E]xpress adoption" of arbitration rules that delegate arbitrability questions to the arbitrator "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Here, the arbitration agreement contains a delegation clause because it incorporates the AAA Consumer Arbitration Rules, and the Terms of Service explicitly state those rules govern the arbitration.  Furthermore, it provides that "The arbitrator will decide the jurisdiction of the arbitrator." Plaintiff and Veryable clearly and unmistakably delegated arbitrability questions to the arbitrator. *See, e.g., Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that "incorporation of the [American Arbitration Association] rules constitute clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability").

14

**5.      Because the parties delegated arbitrability questions, the Court must compel arbitration.**

In light of the delegation provision, the Court must compel arbitration to determine any outstanding arbitrability issues. Although the Fifth Circuit recognizes a narrow exception to submitting arbitrability issues to an arbitrator, that exception is inapplicable here. *See Kubala*, 830 F.3d at 202, n.1. The Court may consider arbitrability despite a delegation clause *only* when "the argument that the dispute falls within the scope of the [arbitration] agreement is . . . wholly groundless." *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014). Such cases are "exceptional," and the Fifth Circuit has cautioned that district courts should not "prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause." *Kubala*, 830 F.3d at 202 n.1. If "there is a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability." *Id.*

The *Douglas* exception does not apply here, as Veryable has established more than a plausible argument that the parties' arbitration agreement covers this FLSA action.

The arbitration agreement covers "All claims and disputes arising out of or relating to these Terms or the use of the Services…." Because the arbitration agreement contains "any dispute" language, this is a broad arbitration clause. "Broad arbitration clauses are not limited to claims that literally arise under the contract, but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute." *Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *3 (N.D. Tex. June 28, 2007); See *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628 (S.D.W. Va. 2001) (Employee's claim that the temporary employment agency violated FLSA was within scope of parties' broad arbitration clause, applicable to any disputes arising out of her employment); *Perez v. Lemarroy*, 592 F. Supp. 2d 924 (S.D. Tex. 2008) (same).

Accordingly, to avoid arbitration on the grounds that her FLSA claim is not covered by the arbitration agreement, Scott must adduce "forceful evidence" in support of her argument that her FLSA claim is not covered by this broad language. *Summit Emergency Holdings, LLC v. Michael J. Camlinde & Assocs., Inc.*, 2018 WL 5631502, at *6 (N.D. Tex. Oct. 30, 2018).

There are, therefore, no claims in this action that are not contemplated by the Terms of Service. Because Plaintiff and Veryable entered into an arbitration agreement that contains a delegation clause, and because the agreement covers the parties' dispute in this action, any issues of arbitrability should be decided by an arbitrator rather than the Court.

**6.      Since the waiver of class actions is enforceable, the parties are entitled arbitration.**

The arbitration agreement is conditioned upon the waiver of class or consolidated actions being enforceable. The Terms of Services contains a waiver of class or consolidated actions, which provides:

> Waiver of Class or Consolidated Actions. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER. If, however, this waiver of class or consolidated actions is deemed invalid or unenforceable, neither You nor Veryable are entitled to arbitration; instead all claims and disputes will be resolved in a court as set forth in Sections 12 and 13.

Thus, if the waiver of class actions is invalid or unenforceable, then neither party is entitled to arbitration.  Instead, all claims and disputes will be resolved in a court.   The waiver at issue here, however, is valid and enforceable.

The Sixth Circuit in *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 297 (6th Cir. 2018), citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018),[3] held the Fair Labor Standards Act does not prohibit the use of arbitration agreements which ban class actions and other collective actions. "Arbitration agreements containing class waivers are enforceable in FLSA cases. Thus, FLSA plaintiffs may be required by a binding arbitration agreement to proceed individually." *Hill-Smith v. Silver Dollar Cabaret, Inc.*, 2018 WL 6579917, at *2 (W.D. Ark. Dec. 13, 2018) citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018); See also *Hood v. Uber Techs., Inc.*, 2019 WL 93546, at *6 (M.D.N.C. Jan. 3, 2019) ("There is nothing unlawful about a requirement that drivers with active Uber accounts abide by a new technology agreement and agree to waive their right to opt out of any future arbitration agreement, which, while it serves to prevent future collective actions, still allows individual actions.")

Furthermore, although the waiver does not use the term "collective action," courts generally use the words "class action" when referring to FLSA collective actions. *Copello v. Boehringer Ingelheim Pharm. Inc.,* 812 F. Supp. 2d 886 (N.D. Ill. 2011) ("class" is broad enough to describe the group of individuals opting into a § 216(b) collective action). "As a matter of ordinary usage, the term 'class' encompasses a group of individuals opting into a § 216(b) collective action, and the term 'class action'" encompasses the legal proceedings that follow certification under § 216(b)." *Copello v. Boehringer Ingelheim Pharm. Inc.*, 812 F. Supp. 2d 886, 892 (N.D. Ill. 2011).

Accordingly, the waiver provision is enforceable, and the parties are entitled to arbitrate Plaintiff's claims.

---

[3] *Epic Systems Corp. v. Lewis* held that the National Labor Relations Act does not prevent the use of arbitration agreements with class and collective action waivers covered by the Federal Arbitration Act.

7.      **The Court should dismiss this action against Veryable pending resolution of arbitration.**

The rule (9 U.S.C. § 3) that requires staying the action upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration, "was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *accord Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("[W]e are bound by our precedent which states that dismissal is appropriate 'when *all* of the issues raised in the district court must be submitted to arbitration.'" (quoting *Alford*, 975 F.2d at 1164)); *Ascension Orthopedics, Inc. v. Curasan AG*, No. 1:06-cv-424-LY, 2006 WL 3257723, at *1 (W.D. Tex. Oct. 26, 2006) ("[T]his Court finds that all of the issues raised in this cause must be submitted to arbitration. The Court will therefore dismiss the case with prejudice.").

Because all of the issues in this case against Veryable, including gateway issues of arbitrability, are subject to arbitration, the Court should dismiss this case against Veryable with prejudice. *See Alford*, 975 F.2d at 1164; *Ascension Orthopedics*, 2006 WL 3257723, at *1.

### III. CONCLUSION

Because Scott created a Veryable account, she must have clicked the "Finish" button immediately above the Terms of Service, and thus agreed to those Terms or had constructive notice of those Terms.  Moreover, the law favors Veryable's position that the parties agreed to the Terms of Service.

"A party who signs a document is presumed to know its contents." *In re Intern. Profit Assoc., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009) (cleaned up). Accordingly, "parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation." *Id.* at 924. These same rules "appl[y] to contracts which appear in an electronic format." *Barnett v. Network Sols., Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied). The court should compel Plaintiff to arbitrate her claims.

Furthermore, since all the issues in this an action must be submitted to arbitration, the court should dismiss this action against Veryable. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

For the foregoing reasons, Veryable respectfully requests that the Court grant its motion and dismiss the claims against Veryable pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Further, Defendants seek an order from this Court compelling the Plaintiff to arbitrate.

Respectfully submitted:

By: ___*/s/ Angella H. Myers*_____
    Angella H. Myers
    State Bar No. 24027229
    amyers@myerslawllp.com
    Janice S. Parker
    State Bar No. 15488050
    jparker@myerslawllp.com

    **THE MYERS LAW GROUP, LLP**
    8144 Walnut Hill Lane, Suite 390
    Dallas, Texas 75231
    Telephone: (972) 781-2400
    Facsimile: (972) 781-2401

    *Attorneys for Defendant, Veryable, Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

Per Civil Rule 7.1, before filing this motion, the undersigned conferred with counsel for Plaintiff on  April 4, 2019. Counsel for Movant has conferred by electronic mail with counsel for plaintiff regarding the arbitration provisions as well as this motion.  And Plaintiff's counsel has been provided the arbitration agreements in advance of filing as well.  Counsel for Plaintiff is reviewing same with his client and will respond.  While at this time undersigned is unaware of the motion is opposed or unopposed, due to deadlines for responsive pleadings, this motion is being filed to protect Defendant's interests.

*/s/ Angella H. Myers*
Angella H. Myers


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certified that a true and correct copy of this pleading was served upon all counsel on this 8th day of April 2019 via the Court's ECF system.

*/s/ Angella H. Myers*
Angella H. Myers